UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK RUSH MINING, LLC, an Illinois Limited Liability Company, INDIANA FARMS, INC, an Illinois corporation, LAFAYETTE ENERGY COMPANY, an Illinois corporation, and JOHN A. BRANDT, individually, | |
| Plaintiffs, | |
| v. | No. 11 C 03257 |
| BLACK PANTHER MINING, an Indiana Limited Liability Company, FIVE STAR MINING, an Indiana corporation, BB MINING, an Indiana corporation, PATRICK BLANKENBERGER, individually, DAVID M. BLANKENBERGER, individually, and DONALD BLANKENBERGER, individually, | Judge Ruben Castillo |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Black Rush Mining, LLC ("Black Rush"), Indiana Farms, Inc. ("Indiana Farms"), Lafayette Energy Company ("Lafayette"), and John A. Brandt ("Brandt") (collectively, "Plaintiffs") bring this action against Black Panther Mining, LLC ("Black Panther"), Five Star Mining, Inc. ("Five Star"), BB Mining, Inc. ("BB Mining"), Patrick Blankenberger, David M. Blankenberger, and Donald Blankenberger (collectively, "Defendants") for breach of an oral partnership agreement (the "Partnership Agreement"). (R.1, Compl.) Presently before the Court is Plaintiffs' motion to disqualify attorney Terry G. Farmer ("Farmer") and the law firm of

1

Bamberger, Foreman, Oswald, & Hahn LLP (the "Bamberger Firm") from representing Defendants in this matter. (R.16, Pls.' Mot.) For the reasons stated below, the motion is denied.

## RELEVANT FACTS[1]

This dispute centers upon the alleged breach of a Partnership Agreement by the Defendants as it relates to Oaktown Mine No. 1 ("Oaktown Mine"), a mine property located in Southern Indiana. (R. 1, Compl. ¶¶ 21, 28-30.) Brandt is President of both Lafayette and Indiana Farms, as well as the sole member of Black Rush. (*Id.* ¶ 4; R. 16-2, Brandt Decl. ¶ 1.) Patrick Blankenberger, David M. Blankenberger, and Donald Blankenberger (collectively, the "Blankenbergers"), are members of Black Panther, and Officers of both Five Star and BB Mining. (R. 1, Compl. ¶ 11.) Brandt alleges that since at least 1998, when he and the Blankenbergers entered into the Partnership Agreement, they have worked together in the coal business, sharing the risks and rewards as equal partners. (*Id.* ¶ 17.) Under the terms of the Partnership Agreement, Brandt or an entity controlled by him undertook primary responsibility for the sales-end of the operations and the Blankenbergers or an entity controlled by them undertook primary responsibility for the mining-end of the operations. (*Id.* ¶ 18.)

Pursuant to the Partnership Agreement, Brandt and the Blankenbergers have worked together to develop, operate, and enter into contracts for the sale of coal from at least two mining properties, including Prosperity Mining [sic] Southern Indiana ("Prosperity Mine"), and Hazleton Mine. (*Id.* ¶¶ 18-20.) Although Prosperity Mine is owned by Vectren Fuels ("Vectren"), Brandt and the Blankenbergers continue to operate, manage, and sell coal from

---

[1] In addition to Plaintiffs' complaint, the parties have filed declarations in support of their respective positions and several exhibits. The facts that follow are drawn from all of these sources.

Prosperity Mine and share risks and rewards on a fifty/fifty basis. (*Id.* ¶ 19.) Upon the sale of Hazleton Mine, Brandt and the Blankenbergers shared liabilities and proceeds from the sale on a fifty/fifty basis. (*Id.* ¶ 20.) According to the Complaint, Brandt and the Blankenbergers agreed to continue their Partnership Agreement with respect to Oaktown Mine, a mine property owned by Oaktown Fuels Mine No. 1, LLC ("Oaktown Fuels"), a subsidiary of Vectren. (*Id.*)

Brandt avers that, since at least 2007, he worked with the Blankenbergers, Black Panther, Five Star, and BB Mining, as a partner in pursuit of a deal with Vectren, and later Oaktown Fuels, for contract mining, management, and representing coal for sale from Oaktown Mine (the "Oaktown Transaction"). (R. 16-2, Brandt Decl. ¶ 2.) According to Brandt, he and the Blankenbergers proceeded with these contract negotiations with the understanding that a deal with Vectren or Oaktown Fuels would proceed consistent with the Partnership Agreement, such that profits and losses from the Oaktown Mine operations would be shared on a fifty/fifty basis. (R. 1, Compl ¶ 20.) Brandt and the Blankenbergers performed the mining operations and sale of coal from Oaktown Mine consistent with the terms of the Partnership Agreement until the end of 2009, when the Blankenbergers sought to modify the Partnership Agreement and proposed that rather than splitting the profits on a fifty/fifty basis, the Blankenbergers instead retain an eighty percent share. (*Id.* ¶ 24; R. 21-1, Ex. 5, Weiner Letter.) Brandt rejected the Blankenbergers' proposed modification to the Partnership Agreement and informed the Blankenbergers that he intended to continue the Partnership Agreement under the original terms. (R. 1, Compl. ¶ 25.) In the current dispute, Brandt alleges that Defendants have refused to honor the Partnership Agreement by failing to pay Plaintiffs at least $400,000 in profits from the mining and management of Oaktown Mine. (*Id.* ¶ 26.)

Since at least June 2009, and throughout the process of negotiating the Oaktown Transaction, Brandt states that Farmer, a partner at the Bamberger Firm, acted as the attorney representing Brandt, the Blankenbergers, their respective entities, and the partnership's interests in the Oaktown Mine Transaction. (R. 16-2, Brandt Decl. ¶ 3.) Specifically, Brandt states that Farmer acted as counsel "in connection with the negotiating and drafting [of] the Oaktown No. 1 Contract Mining Agreement (CMA)." (*Id.* ¶ 4.) According to Brandt, Farmer "participated in meetings with [him] and one or more of the Blankenbergers[,]" helped prepare "discussion points to use in negotiations with Vectren," and advised Brandt and the Blankenbergers "collectively, on recommended changes to be made to the draft CMA for the mutual benefit of the Brandt/Blankenberger partnership." (*Id.*) The CMA was executed on November 23, 2009. (*Id.*; R. 21-1, Farmer Decl. ¶ 14.) Brandt estimates that throughout the negotiation period, he was present at "90% of the CMA related meetings with Terry Farmer, either in Terry Farmer's office or in the offices of Vectren." (R. 16-2, Brandt Decl. ¶ 4.)

Farmer disputes these allegations. Based upon a review of the Bamberger Firm's records and his personal knowledge, Farmer states that "at no time has [he or the Bamberger Firm] been engaged or has [sic] undertaken to represent any of the Plaintiffs in connection with any matter whatsoever." (R. 21-1, Farmer Decl. ¶ 6.) According to Farmer, the Bamberger Firm does not have an "engagement letter with any of the named Plaintiffs," has not billed Plaintiffs for "attorneys' fees or expenses in connection with any matter," and has not given Plaintiffs any legal advice. (*Id.* ¶¶ 7-9.) The first record Farmer has of performing work for Defendants in connection with the CMA for Oaktown Mine is from a March 13, 2008 meeting held at the Bamberger Firm offices. (*Id.* ¶ 10.) Farmer recalls that Brandt was present at that meeting and

4

was introduced as a consultant to Black Panther. (*Id.*) At that meeting, Brandt informed Farmer that he would be represented by Geoffrey Bryce ("Bryce") of Bryce Downey, LLC, in connection with the Oaktown Transaction. (*Id.*) At this time, Brandt also provided Farmer with a January 3, 2008 letter from Bryce to Brandt (the "Bryce Letter"). (*Id.*; R. 21-1, Ex. 1, Bryce Letter.) The Bryce Letter contains Bryce's comments and observations regarding the Oaktown Transaction. (R. 21-1, Ex. 1, Bryce Letter.)

Other than meetings with representatives of Oaktown Fuels, Farmer's records reflect only two other meetings held exclusively with representatives of Defendants during the Oaktown Transaction negotiations. (R. 21-1, Farmer Decl. ¶ 11.) According to Farmer, "[w]hile it is possible that Mr. Brandt was at one or the other of these meetings, [his] records do not reflect [Brandt's] attendance. Mr. Brandt was present at meetings with Oaktown [Fuels] representatives and its counsel." (*Id.*) Additionally, the Bamberger Firm has no record of "direct written or telephonic communication between this office and Mr. Brandt or any of the other Plaintiffs in connection with the [CMA]." (*Id.* ¶ 12.) Farmer further states that Brandt "never expressed a request for legal advice or services from [him,]" that he never provided or offered to provide legal advice or services to Brandt, that he and Brandt never discussed the Bamberger Firm's representation of Brandt or his entities, and that he never received confidential information from Brandt or his entities. (R. 21-1, Farmer Decl. ¶¶ 23-27.)

Farmer has communicated with Brandt, on behalf of the Blankenbergers or Black Panther, since at least August 2010 regarding the Partnership Agreement's application to Oaktown Mine. On August 12, 2010, Brandt forwarded to Donald Blankenberger a summary written by Brandt's attorney, Jeanne M. Hoffman ("Hoffman") of Bryce Downey & Lenkov,

LLC, regarding the application of the Brandt and Blankenberger Partnership Agreement to Oaktown Mine. (*Id.* ¶ 16; R. 21-1, Ex. 3, Brandt E-mail.) On August 31, 2010, Farmer replied to Brandt on behalf of Black Panther and informed Brandt that Donald Blankenberger was taking the position that the Partnership Agreement would not apply to Oaktown Mine. (R. 21-1, Farmer Decl. ¶ 16; R. 21-1, Ex. 4, Farmer Letter.) On September 28, 2010, Jessica Weiner ("Weiner"), one of Brandt's attorneys, responded to Farmer and rejected the Blankenbergers' proposed modification to the Partnership Agreement as it related to Oaktown Mine. (R. 21-1, Farmer Decl. ¶ 17; R. 21-1, Ex. 5 Weiner Letter.) On October 22, 2010, Farmer responded to Weiner reiterating the Blankenbergers' position, and on May 18, 2011, Weiner delivered a copy of the Complaint to Farmer. (R. 21-1, Farmer Decl. ¶¶ 18-19; R. 21-1, Ex. 6, Second Farmer Letter; R. 21-1, Ex. 7, Second Weiner Letter.)

## PROCEDURAL HISTORY

On May 17, 2011, Plaintiffs filed a complaint alleging that Defendants breached the Partnership Agreement by failing to pay Plaintiffs their fifty percent share of the profits derived from the mining and management of Oaktown Mine. (R. 1, Compl. ¶ 30.) On July 6, 2011, Farmer filed a motion to appear *pro hac vice* on behalf of Defendants; that motion was granted on July 7, 2011. (R. 10, Farmer Mot; R. 11, Min. Entry.) On July 22, 2011, Plaintiffs filed a motion to disqualify Farmer and the Bamberger Firm from representing Defendants. (R. 16, Pls.' Mot.) Plaintiffs argue that Farmer and the Bamberger Firm represented Plaintiffs, Defendants, and/or their partnership throughout the Oaktown Transaction contract negotiations. (*Id.* ¶ 7.) Plaintiffs further argue that the current litigation is for breach of the Partnership Agreement in connection with the Oaktown Transaction. (*Id.* ¶¶ 3, 7.) According to Plaintiffs,

"[t]he subject matter of this suit, the partnership's business with [Vectren] and [Oaktown Fuels] concerning the Oaktown Mine, includes the same subject as that of Terry Farmer's and [the Bamberger Firm's] prior representation of Plaintiffs, Defendants and the partnership agreement involved in this suit." (*Id.* ¶ 9.) Plaintiffs provide a declaration from Brandt in support of these arguments. (R. 16-2, Brandt Decl.)

On July 27, 2011, the Court ordered Plaintiffs to provide it with copies of any non-privileged documents showing the existence of an attorney-client relationship. (R. 18, Min. Entry.) On August 8, 2011, Plaintiffs provided the Court with copies of documents, bates-stamped P00001-157, that they contend contain confidential information shared with Farmer during the course of the Oaktown Transaction contract negotiations. (R. 23, Pls.' Reply at 3)

On August 26, 2011, Defendants filed an opposition to Plaintiffs' motion, arguing that an attorney-client relationship between Plaintiffs and the Bamberger Firm never existed. (R. 21, Defs.' Opp'n ¶ 4; R. 22, Defs.' Mem. at 1-6.) Specifically, Defendants argue that "none of the materials produced by the Plaintiffs establish that (a) any of the Plaintiffs provided the Bamberger Firm with confidential information; (b) the Plaintiffs had a 'reasonable' belief that the Bamberger Firm was acting as the Plaintiffs' counsel[;] and (c) the Plaintiffs ever manifested an intention to seek legal advice from the Bamberger Firm." (R. 22, Defs.' Mem. at 4.) Defendants provide Farmer's declaration and Exhibits 1-8 in support of their opposition to Plaintiffs' motion. (R. 21-1, Farmer Decl.) Alternatively, Defendants argue that even if there was an attorney-client relationship between Plaintiffs and the Bamberger Firm, any conflict arising therein has been waived because Plaintiffs failed to promptly file their motion to disqualify. (R. 22, Defs.' Mem. at 6-8.)

# ANALYSIS

The appropriate test for disqualification is well-settled in this circuit. "Where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related.'" *Westinghouse Elec. Corp. v. Gulf Oil. Corp.*, 588 F.2d 221, 223 (7th Cir. 1978) (*Westinghouse II*). Disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (quoting *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). Courts must carefully balance "the sacrosanct privacy of the attorney-client relationship" with "the prerogative of a party to proceed with counsel of its choice." *Id.* The Seventh Circuit has cautioned that motions to disqualify should be "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722. "[T]he burden is on the moving party to show the facts warranting disqualification." *Van Jackson v. Check 'N Go of Ill., Inc.*, 114 F. Supp. 2d 731, 732 (N.D.Ill. 2000).

Before determining whether a substantial relationship exists between the two representations, the Court must conduct the threshold inquiry of whether there was an attorney-client relationship between Brandt and Farmer. *See DCA Food Indus., Inc. v. Tasty Foods, Inc.*, 626 F. Supp. 54, 58 (W.D. Wisc. 1985). A formal or express attorney-client relationship is not required in order for disqualification to be appropriate, and a party may demonstrate that there was an implied attorney-client relationship. *See Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319-20 (7th Cir. 1978) (*Westinghouse I*) (listing several scenarios "where, although there is no express attorney-client relationship, there exists nevertheless a

8

fiduciary obligation or an implied professional relation[,]" and disqualifying law firm where defendants had submitted confidential information to law firm representing plaintiffs). An implied attorney-client relationship may be demonstrated in the absence of an express agreement if a party shows (1) that it submitted confidential information to a lawyer, and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney. *Id.* at 1319-20; *see also DCA Food Indus., Inc.*, 626 F. Supp. at 59-60. In other words, it is not necessary that the parties execute a formal contract or that the attorney receive a payment of fees; an attorney-client relationship may arise solely from the nature of the work performed and the circumstances under which confidential information is divulged. *Id.* at 1317, 1320. Plaintiffs contend that such an implied attorney-client relationship was formed. (R. 23, Pls.' Reply at 2.) Defendants argue that disqualification is improper because there was never an attorney-client relationship between Plaintiffs and Farmer or the Bamberger Firm. (R. 22, Defs.' Mem. at 1-6.)

I. **Whether Brandt submitted confidential information to Farmer or the Bamberger Firm**

In order to establish that an implied attorney-client relationship existed, Plaintiffs must first show that Brandt shared confidential information with Farmer. Although Farmer states in his declaration that he "never received confidential information from Mr. Brandt or any of his entities[,]" the Court concludes otherwise based on a document attached to his declaration. (R. 21-1, Farmer Decl. ¶ 26.) Specifically, attached to Farmer's declaration is a January 3, 2008 letter from Bryce, Brandt's attorney, to Brandt, that Brandt tendered to Farmer at their initial meeting on March 13, 2008. (R. 21-1, Farmer Decl. ¶ 10, Ex. 1.) The letter details Bryce's opinions, impressions, and recommendations regarding the CMA for Oaktown Mine. (*Id.*) Specifically, the Bryce Letter describes what Bryce believes are the most advantageous ways to

9

structure the Oaktown Transaction to benefit both Brandt and the Blankenbergers. (*Id.*) For example, Bryce states, "we recommend that you and Donnie [Blankenberger] review this paragraph carefully to make sure that you are not too hamstrung in mining operations[,]" and "[i]t seems to us that since you and Donnie [Blankenberger] are creating an asset and expending the greatest effort to develop the operational mine, some of the appreciation of that asset should belong to you and Donnie." (*Id.*) The cover page to this letter contains the statement "CONFIDENTIAL: ATTORNEY WORK PRODUCT; ATTORNEY-CLIENT PRIVILEGE." (*Id.*) On the basis of these facts, it appears that Farmer received at least some confidential information from Brandt.

Plaintiffs also submitted documents to the Court on August 8, 2011, that they contend contain "confidential information [shared with Farmer] during the course of the Bamberger Firm's representation of Plaintiffs." (R. 23, Pls.' Reply at 3.) Defendants argue that "none of the materials produced by the Plaintiffs establish that any of the Plaintiffs provided the Bamberger Firm with confidential information[.]" (R. 21, Defs.' Resp. at 4.) The documents turned over by Plaintiffs consist of sixteen e-mails, sent between November 21, 2007, and December 14, 2009. (Pls.' Docs. P00001-157.) All of the e-mails were sent to Brandt by a Blankenberger employee, the Blankenbergers themselves, or a Vectren employee. None of the correspondence contains any confidential information pertaining to Brandt or entities controlled by him, or any correspondence directly between Brandt and Farmer. Indeed, e-mails in which Farmer could be construed as providing advice or opinions were never sent directly to Brandt, but were instead forwarded to him by someone affiliated with the Blankenbergers. Accordingly,

on this record, the Court finds that the only confidential information that was submitted to Farmer is the Bryce Letter.

## II. Whether Brandt had a reasonable belief that Farmer or the Bamberger Firm was acting as his attorney

The Court next considers whether Brandt reasonably believed that Farmer was acting as his attorney when he provided Farmer with the Bryce Letter. In Brandt's declaration, he states that he "had always understood that Terry Farmer was representing and acting as the attorney for the Brandt/Blankenberger joint interests, i.e. [their] partnership, relating to the business involving the Oaktown Mine No. 1[.]" (R. 16-2, Brandt Decl. ¶ 5.) In their reply, Plaintiffs make the conclusory statement that "Brandt's actions of sharing the [Bryce Letter] with [Farmer] and the Bamberger Firm demonstrate his understanding that the firms were acting like co-counsel[,]" (R. 23, Pls.' Reply at 4), but Plaintiffs fail to develop this argument and the Court finds that Plaintiffs have not shown that Brandt shared the Bryce Letter with the reasonable belief that Farmer was acting as Brandt's attorney.

First, there is no evidence in the record that Brandt shared the Bryce Letter with Farmer with the expectation of obtaining legal advice; instead, the record demonstrates that Brandt was introduced as a consultant to Black Panther. *See DCA Food Indus., Inc.*, 626 F. Supp. at 60 (denying motion to disqualify, in part, where there was "no evidence that [plaintiff] or [plaintiff's attorney] consulted with [defendant's attorney] with the expectation of obtaining legal advice"). Additionally, nothing in the declarations submitted by the parties suggests that Brandt ever independently sought any legal advice from Farmer, that Farmer ever provided Brandt with legal advice, that Brandt exercised any control over Farmer's work, or that Brandt ever paid Farmer for his work. *See Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.* 657

11

F.Supp. 1486, 1497 (N.D. Ill. 1987) (denying motion to disqualify where attorney had previously worked with Plaintiffs and Defendants on a joint patent application, despite moving party's affidavit that he believed attorney had been preparing patent application on his behalf). Nor is there evidence of any direct communications between Brandt and Farmer or another attorney at the Bamberger Firm. The documents submitted by Plaintiffs to the Court demonstrate that Brandt never initiated contact with Farmer; rather, Brandt received correspondence from Farmer indirectly, via the Blankenbergers or one of their employees. Instead of demonstrating that Brandt had a reasonable belief that Farmer or the Bamberger Firm was acting as his attorney, the documents provided by Plaintiff show that Farmer was performing work on behalf of the Blankenbergers and Black Panther with respect to the Oaktown Transaction. Finally, Plaintiffs have failed to identify any meetings between Brandt and Farmer at which the Blankenbergers were *not* present. (R. 16-2, Brandt Decl. ¶ 4.) Under these circumstances, the Court finds that it was unreasonable for Brandt to believe that Farmer was acting as his, or his entities', attorney, and therefore Plaintiffs have not established the existence of an implied attorney-client relationship.[2]

---

[2] The Court also notes that under these circumstances, any confidential information that Farmer could possess about Plaintiffs would presumably also be known by Defendants, and thus, disqualifying Farmer from representing Defendants in this matter would serve no legitimate purpose. *See Mindy's Rest., Inc. v. Watters*, No. 08-5448, 2009 WL 500634, at * 3 (N.D.Ill. Feb. 27, 2009) (finding attorney disqualification improper where "any information that might have been divulged" to the attorney at issue during a meeting where both Plaintiffs and Defendants were present was "presumably already known to both Defendants"); *see also Rocchigiani v. World Boxing Counsel*, 82 F. Supp. 2d 182, 187-88 (S.D.N.Y. 2000) (noting that the substantial relationship test is inapposite "where the prior representation by the attorney in question was within the context of a joint representation between a former, but now adverse, client and a present, long-standing, client[,] . . . as the former client could not reasonably expect confidences imparted to the attorney during the course of the joint representation to be withheld from the other client").

Seeking to avoid this result, Plaintiffs point to two of the documents they submitted to the Court to "demonstrate [Brandt's] reasonableness in believing that [Farmer] was acting as his attorney with respect to the negotiation of the [CMA] with Vectren." (R. 23, Pls.' Reply at 3; Pls.' Docs. P00012-13, P00017-23.) Plaintiffs first point to a two-page letter, dated July 8, 2009, from Farmer to Patrick Blankenberger in which Farmer outlines some talking points to be used with Vectren and states that "[u]pon further review of your organization as well as John Brant [sic], my understanding is that additional items may be added before it is presented to Vectren." (Pls.' Docs. P00012-13.) Brandt obtained a copy of this letter directly from Donald Blankenberger. While the language in the letter could imply that Farmer had some knowledge of Brandt's entities, the fact that this letter was sent to Brandt by Blankenberger, not Farmer, undercuts the idea that Farmer was working as Brandt's attorney.

Plaintiffs next point to a letter dated June 17, 2009, from Farmer to Patrick Blankenberger, detailing Farmer's preliminary comments on a draft of the CMA. (*Id.* P00017-23.) Again, Farmer did not send this letter directly to Brandt. Rather, Donald Blankenberger forwarded the e-mail to a Five Star employee who then forwarded the letter to Brandt. *Id.* In addition, none of Farmer's comments reference Brandt or his entities, and instead make recommendations only in regard to Black Panther. *Id.* The Court finds that the two documents Plaintiffs identify do not support their argument that Brandt had a reasonable belief that Farmer or the Bamberger Firm was acting as Brandt's attorney.

Finally, Plaintiffs' reliance on *Nelson v. Green Builders, Inc.*, 823 F. Supp. 1439, 1445 (E.D. Wisc. 1993), to support their position that an implied attorney-client relationship was entered into by Farmer and Brandt is unavailing. In *Nelson*, the court found that the attorney had

13

entered into an attorney-client relationship with one of the plaintiffs in his personal capacity because, among other things, that particular plaintiff had retained the attorney to perform a variety of activities that he was required to perform under the partnership agreement therein at issue. 823 F. Supp. at 1448. The court also found that the attorney had entered into an implied attorney-client relationship with the partnership because the attorney had performed legal work for the partnership, even though the attorney had not been formally retained to perform such work. *Id.* at 1449. Here, nothing in the record before the Court demonstrates that Brandt himself retained Farmer to perform work for him, nor is it clear that Farmer was doing work for the partnership. Rather, the documents submitted by Plaintiffs demonstrate that Farmer was only providing advice to the Blankenbergers with respect to Black Panther (the entity named in the CMA and controlled by the Blankenbergers) and not to the partnership as a whole.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to disqualify Farmer and the Bamberger Firm (R. 16) is DENIED. This case is set for a status hearing on February 2, 2012 at 9:45 a.m. The parties are once again requested to exhaust all settlement possibilities for this lawsuit.

Entered: /s/ Ruben Castillo
**Judge Ruben Castillo**
**United States District Court**

**Dated:** January 11, 2012